Next case for argument is 20-1566, In Re PersonalWeb Technologies, Mr. Underwood, whenever you're ready. Thank you, Your Honor. May it please the Court. Good morning. There are four issues before the Court in this case today, two issues of claim construction and two issues of summary judgment of non-infringement. And I suppose I'll take the claim construction issues first. Can I just ask you, Mr. Underwood, this is just prose, can I just ask you a housekeeping question at the beginning? What do we need to decide and what, if we decide against you, resolves the entire case? Well, Your Honor, so the only issue that would address the entire case is the claim construction of the unauthorized or unlicensed claim term. That addresses all three of the claims that are currently asserted. The two summary judgment issues, one of them hits two of the claims, the other one hits two of the claims. So if both of those were resolved against us, that would resolve the case. Otherwise, the only issue that is completely case dispositive is the claim construction of unauthorized or unlicensed. Thank you. Okay. So, Your Honor, as I said, I'd like to begin with the claim construction and in particular with the construction of unauthorized or unlicensed because, as I said, that's the only issue that is potentially completely dispositive of the case. Now, the claim term, which appears in all three claims, recites unauthorized or unlicensed. That is a disjunctive term in the A or B format. Now, this court has had decades of precedent and many, many cases holding that when a claim term recites A or B in the disjunctive format, A and B are alternatives to each other. But here... Mr. Underwood, this is Judge Lurie. If you look at the 310 patent, it says a licensee is a user authorized to have access to an object. The patent itself equates these terms. Well, Your Honor, first of all, there are places where the term authorized is used in the same sentence or in the vicinity of the word licensed. That's true. But that makes grammatical sense because, as we pointed out in our briefs, as a matter of plain English, unauthorized is a broader term than unlicensed. Unauthorized... But in the context of licenses, a license grants authorization. Correct. Right. And so licensed is a subset or a species of the... But the 310 patent says is definitional. Your Honor, I don't believe that there is an express definition of unauthorized to be equivalent to unlicensed anywhere in the specification of the patents. And not even the district court found that there was an express definition. The district court relied on the, quote, interchangeable use of the terms unauthorized and unlicensed in the specification. Now, as an initial matter, we disagree that there is interchangeable use of the two terms. And when I was getting ready for the argument today, I went through the specification and I saw that the term licensed appears 25 times or variants of licensed. The terms authorized or variants appear nine times. So two out of the three times, the terms aren't even used in the same... Aren't even used together, which doesn't suggest interchangeability. Sorry. That's not just sloppy drafting? I don't think it was sloppy, Your Honor. I think it makes perfect sense. And if you look at the few instances they cite where licensed and authorized are used in close to each other, it makes grammatical sense. So it'll say, for example, here's a license table. And the licensee is someone who is authorized. Well, that's true because, again, authorization is a broader term than licensing. So grammatically, those make sense. And I think more importantly, in Thorner, this court set out a pretty clear standard for claim construction, which is the patentee is entitled to the full scope of the claims as written under plain meaning unless one of two things occurs. One, there's an express disavowal, not an implicit disavowal, an express disavowal. Or two, the patentee acts as its own lexicographer. Now, neither of those things happened here. And the district court didn't even find that either of those things happened. They never found that we disavowed the full scope of unauthorized. And they never found that we defined unauthorized and unlicensed to mean the same thing. Instead, the district court relied on the so-called interchangeable use. Now, I disagree that there is interchangeable use. But even if there was, the only case that the district court relied on to say that that was the Baran case. But in the Baran case, the two alleged interchangeable terms did not appear in the same disjunctive claim limitation. They appeared completely separate parts of the claim. So I think it is a massive stretch to say that you can go from, quote, unquote, interchangeable use to suddenly saying that the two halves of a disjunctive claim term mean the same thing. And in our view, that would take away from the public notice function of patents because now the public would need to dive into the specification and try to see, okay, how interchangeable was the use? Am I really going to think that A really means the same thing as B? We don't think that's a workable standard, Your Honors. We think the workable standard is when a patent claim uses the terms A or B, it means what it says. They are alternatives. And here, one of the alternatives is unauthorized. And we do believe the specification... Counsel, this is Judge Reynaud. Why is it that OR has to be an alternative and not just simply signify that you have synonyms here? Well, I think that's been the holding of this court in many, many cases, Your Honor, including the Schumer case where this court said it has consistently held that OR denotes alternatives. And again, I think that goes back to the public notice function of patents. Everyone reading a patent, especially in view of this court's authority on the issue, sees OR. Certainly when I see OR in a patent claim, I think alternatives. The claim is satisfied if you do A or B. And I don't believe there's ever been a case with this court, certainly it wasn't cited by appellees and we didn't find any, where OR in a patent claim was found to just mean synonyms. They did find the Supreme Court case on statutory construction, but that was entirely different. That was operating under the narrow presumption of Congress's limited intent to preempt state law. In a patent claim, the rule is you get the full scope unless there's expressed as a vowel. And the full scope of an OR term is both elements. So Your Honors, I'd like to move on now to the next claim construction issue, which is the construction of content-dependent name. Now this court already addressed essentially the same exact language in the Apple case, 848F3 at 989. Now there, Personal Web was on the opposite side of the issue. Personal Web was arguing that the claim should require using all of and only the data in the data item, but Personal Web lost. So now that's the law of the land. That was a binding precedential decision with decisive effect. So we think this court should and must follow its prior decision in Apple and hold that the at least some of and at least in part language with respect to content-dependent name does not require using all of and only the data in the data item. And the district court based its contrary finding on a finding of prosecution history disclaimer, but the disclaimer there was allegedly happened in a parent application. Now this court's law is clear from OMEGA engineering that a disclaimer from a parent only applies if the claim language is identical. And here the claim language could not have been more different. So we submit that the construction of all of and only should also be reversed and should be construed in accordance with the plain meaning of the claim. Moving on to the summary judgment issues, first I will take the permitting or allowing claim term which appears in claim 20 of the 310 patent and claim 11 of the 442 patent. Now the district court found at appendix page 50 that the operation of the accused servers is undisputed on this point. So then the question of infringement boils down to the legal question of does the undisputed operation read on the claims. Now the undisputed operation is this. The accused servers receive a conditional get request from a cash that wants to serve a stale or expired file to a browser. Now in that conditional get request, the cash sends the e-tag of the cached file. The accused server compares the e-tag of the cached file against the e-tag of the current file on the server. If they match, that means the file hasn't changed. The server sends a 304 not modified message. If they don't match, that means that it has changed. So the server sends a 200 OK message. Now the key point is that under the HTTP specification, it is mandatory that if the server sends the 200 OK, meaning that the file has changed, the cash must serve the new version of the file and may not serve the old version. And that's at appendix page 5733, which is the HTTP specification. At the same time, the cash cannot serve the old version of the file until it checks back with the origin server and receives the 304 not modified. And that's at appendix page 5783, which is again the HTTP specification, which says when a cash has a stale entry that it would like to use as a response, it first has to check with the origin server to see if the entry is still usable. So in combination, the message that the accused server sends either permits the cash to serve the old file, that's if it sends the 304 message, or it does not permit the cash to serve the old file if it serves the 200 message. And that reads on the claims, Your Honor, which is all that's required. And again, we're dealing with an appeal from a summary judgment of non-infringement, so all that's required is sufficient evidence for any reasonable jury to find infringement. And we submit that there was. Finally, I'd like to move on to the determining whether a copy was present claim limitation. That appears in claim 10 and 11 of the 442 patent. Now appellees in their brief make a lot of arguments about what the ETag comparison on the origin server doesn't do. They say it doesn't locate a file. But the claims don't require using the ETag comparison to locate a file. They only require determining whether a copy is present. And that is exactly what the ETag comparison does. It compares the old ETag to the new ETag. And if the ETags match, the files are the same, which means they are copies. And Your Honors, that is all that is required in order for the claim to be satisfied. So we submit that there is sufficient evidence in the record for the summary judgment to be reversed, and that decision should be reversed as well. I reserve the remaining time. Thank you. Let's hear from the other side. Mr. Haddon? Yes. Good morning. May it please the Court, Dave Haddon for Amazon and Twitch. There is nothing in the Accused Features of the HTT protocol that determines whether content is authorized or unauthorized. There is nothing in the HTTP protocol that permits or does not permit access to content. HTTP is anonymous. The protocol assumes that everybody gets what they ask for. The client browser gets whatever it asks for from any server, and the server provides that content to any browser that asks for it. Counselor, this is Judge Reina. In that regard, where you are at now, does a finding of patent eligibility here pose any or significant problems of preemption? Yes. What Personal Web is reading these claims on in this case is indicative from the MDL where we had 80 companies whose only common activity was that they hosted websites. So, basically, Personal Web is now trying to read this patent on a standard feature of the HTTP protocol with respect to how caches are controlled and updated using e-text. So, yes, they're basically claiming a big chunk of the web. But what they're claiming that the web does does not have anything to do with authorizing access to content. Now, to be clear, there are optional features in HTTP that allow a web server to authorize a user, but those are not accused in this case. What is accused is the generic use of caches and e-text. Now, caches are an efficiency mechanism, right? It's a way to reduce the number of requests that have to go to a server and the number the amount of data that has to be sent back and forth across the Internet. But that's all they are. They're just a mechanism to allow a browser to more efficiently give or display the content to the user. And e-tags are just a mechanism to make that caching more effective. They're not used to control access to content or determine whether content is authorized. It's kind of a simple point, which is when a browser does one of these conditional get requests, they're basically asking the server to give me this object at this URL if it's different than the one you already gave me. And when the web server makes that determination, it's not reneging the permission for the browser and the user can do whatever they want with that content that had been previously provided. And in fact, the HTTP protocol requires that browsers make that stored content available to the user when the user uses their back button to look at their history log. And this is at Appendix 5797. And it requires that browsers basically ignore those expiration dates when the user wants to look at their browse history. So the user has the object. Nothing is not permitting the user to access the object. And in fact, the ability for the user to continue to access those stale objects is required by the HTTP protocol. So as Judge Freeman correctly found, these claims require an affirmative, allowing, permitting, or not allowing, not permitting step. And those elements cannot simply be inferred from the entirely different functions in EQ's products, i.e. the server setting. Well, let me just, Mr. Haddon, before your time runs out, could you turn back to where your friend began, which is on the claim construction question and what he characterizes as the common practice of using the disjunctive referring to alternatives? Yes, Your Honor. So using or in the disjunctive requires that the items in the list, the alternatives, are mutually exclusive. Apples or oranges is a proper use of or. But oranges or citrus fruit is not a proper use of or because oranges is then superfluous. It is, as Personal Web argues, a species of citrus fruit. But that is not a proper use of the disjunctive. So even if you're going to pretend that or is used here in the disjunctive, all that does is make other parts of the claim language, in particular the or unlicensed, superfluous. And Personal Web makes that explicit in their proposed construction where they say unauthorized or unlicensed. So what is the point you are making, that if we use the principle of saying that we're which is you have to give meaning to every claim term? Exactly, Your Honor. So the consistent way to understand the or here is what Judge Rayner proposed and what the Supreme Court did in the Hawaiian Airlines case, which is saying that these are alternative substitutes. They are synonyms that reinforce each other. And that is confirmed by the specification because the only use of unauthorized throughout this patent is the context of the license table and the lack of a license or a valid license of the content. And as I think Judge Lori indicated, and it's confirmed throughout the specification, the terms are used synonymously throughout. The license E is the identity of a user authorized to have access to the object. And then in the track for licensing purposes, the patent says this mechanism ensures the license files are not used by unauthorized parties. So every use of authorized is in the context of a license. There is no other notion of authorized in this patent. And in fact, the title of the 442 patent is Enforcement and Policing of Licensed Content Using Content-Based Identifiers. So the alternative mechanisms that the person pointed to in the brief about locked flags in the file system to prevent inconsistent rights to a file or designating part of a disk as read-only have nothing to do with authorizing or unauthorizing access to content. And none of those descriptions use the word authorized or unauthorized at all. So there is a single concept here. And the only consistent way to read the claim language without rendering parts of it superfluous is to treat that as a single concept, as Judge Freeman correctly did. But even if you were going to adopt Personal Web's proposed construction, there is still no determination that content is not permitted or access to content is not permitted in the accused's use of e-tags in the HTTP protocol. That is, as Judge Freeman noted, e-tags are just a versioning mechanism. And so under any construction, there is no infringement here. Determining whether a copy is present on a computer. It's useful, I think, to look at the claim, which is reproduced at the red brief. And it's the Claim Canada 442 patent. And if you read this claim, it very closely tracks the licensing audit procedure described in the patent. And if you recall, in the patent with these true names, every computer has this true name registry that lists all of the files on the computer by their name. Since the name is immutably tied to the content of the file, you can tell what the file is by its name. And so what this describes is, if you are checking to see whether a file that requires a license has been violated, you provide the name. You then look and see, determine whether, what computers have a copy of that file based on the name. And then you determine whether that file is authorized or unlicensed. Right? So you're checking this, you're auditing the computer. Nothing like this is done on the web using e-tags. When the server compares the e-tag for the current version of a file associated with the URL, it finds the file based on the URL. And then it just makes this comparison of its e-tag with the one it received. But that comparison doesn't tell you anything about what other files are on the server. The server could have the old version of the file as well. It could have a different version of the file with a different URL. It tells you nothing about what's on the server. And in fact, it's funny. Below, PersonWeb's expert said that when the two e-tags do not match, that means there's a copy of the file on the server. And on appeal, PersonWeb's lawyer is making the opposite argument. That when the two files match, that means there's a copy of the file on the server. But neither is correct. E-tags are not used to determine what files are on the server. They're just used to determine two files that have already been located, whether they're the same or not. And even after that, there's no determination whether or not the copy of the file, whether it's on the server or not, is unauthorized or unlicensed. There's just nothing like that done in the HTTP protocol, because there's nothing to do with determining whether content is authorized or permitted or not. It's just a mechanism for efficiently providing new content to browsers. And browsers can keep the old expired content. And in fact, that is contemplated and shown in the HTTP protocol, in addition to the back button and the history mechanism. Because even these very if-none-match requests that are being accused in this case, the HTTP protocol specifies that the browser can actually include multiple e-tags for all the prior versions that it has currently stored. And in that case, the web server compares its current e-tag against each of those and basically sends a new version, only if it differs from any of the old versions that the browser already has. But that just confirms that nothing is not permitting the browser or the user to access the old versions of the content that the server has already provided to it. Mr. Hadley? Yes. I'm sorry. This is Judge Proust. Just a housekeeping question before your time runs out. I assume you don't disagree with your friend for the hypothetical I raised with him on how the entire case... He led with claim construction. You led in your briefs with the summary judgment of non-infringement. But I assume you agree with him that the case could be resolved hypothetically on one claim construction question or alternatively on two of the summary judgment non-infringement claims? Absolutely right, Your Honor. Okay. But let me ask you before... One point. Let me finish my question. Okay. I'm sorry, Your Honor. So this case is part of an MDL that has 80-plus cases. And as far as you can tell, and I'll ask your friend to confirm on the other side, does how we were to hypothetically resolve this case matter or differ for any of the cases involved in the MDL? No. It's all... The answer is the same for all? The answer is the same. And actually, Your Honor, Judge Freeman entered judgment in the other, whatever, 80 cases, the customer cases. And a person would never appeal those judgments. So I believe at this point the only cases that are still in play is the Amazon case and the Twitch case. Okay. Thank you. And just one last point on the what matters and what doesn't matter. This content-dependent name construction doesn't matter at all. It is not an issue in the summary judgment order. Judge Freeman did not grant summary judgment on any claim element relating to that construction. So I'm not actually sure why it's in this appeal. And the e-tags at issue here are calculated by hashing the entire content of the object. So they met the narrower requirement. So it's just kind of irrelevant to this appeal. Unless Your Honor has other questions, I will stop there. Hearing none, thank you, Mr. Hatton. Mr. Underwood, you have rebuttal time left. Thank you, Your Honor. Just to answer that last question, the construction of content-dependent name matters because it could affect Personal Web's ability to prove infringement in certain circumstances going forward. And also, of course, this is our one and only chance to appeal the adverse claim construction. Now, I also want to address the argument, which was made at length in the briefs and repeated in oral argument, that the specification does not disclose any authorizations that have nothing to do with licensing. Now, we lifted a few in the briefs, but I want to bring the Court's attention to two passages in the specification, which further support that it is supported. First, at Appendix 300, Column 8, Lines 37 through 41, the patent says, Region Table 128 defines the rules for access to and migration of files among various regions within the local file system. So this region table is controlling access to files, and it has nothing to do with licensing. If you then proceed to Appendix 307, Column 21, Lines 17 through 21, the patent says, If it is determined by inspecting the Region Table 128, that's the same one I just mentioned, that the file is in a cached region, then send a Lock Cache message to the corresponding cache server and wait for a return message. If the return message says the file is already locked, prohibit the opening. And this is all in the context of the open file mechanism. So this is specifically saying, look at this region table and have a cache server send a message that prevents opening a file, that prevents access to a file. This is access control that has nothing to do with licensing, and it also reads exactly on what the accused servers do. Now, Mr. Haddon said that nothing that the accused servers do revokes or reneges permission. I believe he said for a browser or a user to access the file. But what Personal Web is charging with infringement is what the cache does. And the HTTP standard treats caches and browsers separately. What a 200 message does is it tells a cache, you are not permitted to serve the old version of the file to the browser. And that makes sense because this request only happened when a user went on their computer and typed in, for example, www.twitch.com. Twitch wants to control when the user is going to see old versions of the file. So when the expires time that Twitch has set has expired, and they send a new version of the website, that must be displayed under the HTTP standard. We submit that reads on the claims. Now, Mr. Haddon also used the analogy of a claim that would say, oranges or citrus. And then that would render oranges superfluous. And I don't disagree with that. And the claims as written do have a degree of redundancy in them. In that, yes, unlicensed is a subset of unauthorized. But when you have a claim like that, that recites a genus or a species, the rule is patentee is entitled to the full claim scope, absent is a vowel. So in that case, you have to go with the broader genus alternative, not the narrower species alternative, because that's the only way to give the patentee their full scope. Mr. Haddon also mentioned what can happen with a back button on a user's computer. But as we say in the briefs, that's not what we're accusing of infringement in this case. And it couldn't be, because Amazon and Twitch don't control what a user does by clicking on their back button. What we accuse of infringement is the message that Amazon or Twitch send, the OK or not modified message. And that reads on the claims. Unless there are no further questions, Your Honor, for those reasons and the reasons stated, we would submit. The judgment should be reversed and the case remanded for trial. Perfect timing. Thank you. Both cases submitted.